*17*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

v.

ALI NASERDEAN,

              Defendant.

Case: 2:25-cr-20454
Assigned To : Hood, Denise Page
Referral Judge: Patti, Anthony P.
Assign. Date : 6/17/2025
Description: INDI USA V. NASERDEAN (NA)

VIO.: 18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 2
      18 U.S.C. § 981
      18 U.S.C. § 982

---

## INDICTMENT

## THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment ("Indictment"):

### The Medicare and Medicaid Programs

1. The Medicare program ("Medicare") was a Federal health care program providing benefits to persons who were age 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare "Part D" subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.  Part D benefits were administered by private insurance plans, often referred to as Medicare drug plan "sponsors," through prescription drug plans ("Prescription Drug Plan"), that were reimbursed by Medicare through CMS.

4.     Beneficiaries obtained Part D benefits in two different ways: they either joined a Prescription Drug Plan that covered only prescription drugs, or they joined a Medicare Advantage Plan that covered both prescription drugs and medical services.

5.     Under Part D, a pharmacy was authorized to contract with multiple Medicare drug plan sponsors or their Pharmacy Benefit Managers ("PBM") and submit claims for prescriptions filled and dispensed to Medicare Part D beneficiaries.  A pharmacy was also authorized to submit claims for payment to a Medicare drug plan sponsor with which it did not have a contract and receive reimbursement.

2

6.     Typically, a Medicare beneficiary enrolled in a Prescription Drug Plan filled their prescription at a pharmacy utilizing their benefits to cover the cost of the prescription.  Generally, Medicare covered these costs if, among other requirements, the prescribed drugs were medically necessary and were ordered by a physician. The pharmacy then submitted a claim for reimbursement for filling the prescription to the beneficiary's Medicare drug plan sponsor under the beneficiary's Health Insurance Claim Number and/or Medicare Beneficiary Identifier.

7.     The Michigan Medicaid program ("Medicaid") was a federal and state funded program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care.  CMS was responsible for overseeing Medicaid in participating states, including Michigan.   Individuals who received benefits under Medicaid were similarly referred to as "beneficiaries."

8.     Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled.  Among the specific medical services and products provided by Medicaid were reimbursements to pharmacies for the provision of prescription drugs.  Generally, Medicaid covered these costs if, among other requirements, the prescribed drugs were medically necessary and were ordered by a physician.

Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

9.     Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

**The Private Health Insurance Program**

10.   Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan.  BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals.  Individuals insured by BCBS were referred to as BCBS "members."

11.   BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

12.   Pursuant to its agreements, BCBS covered the costs of medical services and products including by providing reimbursements to pharmacies for the provision of prescription drugs.  Generally, BCBS covered these costs if, among other requirements, they were medically necessary and were ordered by a physician.

13.   BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

**Pharmacy Benefit Managers**

14. PBMs managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and private insurers like BCBS. PBMs received, adjudicated, and paid claims on behalf of Medicare, Medicaid, and BCBS.

15. Pharmacies entered into pharmacy provider agreements to enroll with PBMs. As part of this enrollment, pharmacies agreed to operate in compliance with applicable laws and further agreed that the pharmacies would not submit incomplete, false, or fraudulent claims for reimbursement.

16. After a pharmacy dispensed a prescription drug to a beneficiary, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

17. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. CVS Caremark, OptumRx, and Express Scripts processed and adjudicated claims outside the state of Michigan.

## Relevant Entities

18.   Gracee Pharmacy PLLC ("Gracee") was a pharmacy last located at 1338 N. Telegraph Road, Dearborn, Michigan 48128.  Gracee was previously located at 14100 Woodward Avenue, Highland Park, Michigan 48203, and 11825 Woodward Avenue, Highland Park, Michigan 48203.

19.   Warren Family Pharmacy LLC ("Warren Family") was a pharmacy last located at 29156 Hoover Road, Warren, Michigan 48093, with a previous office address at 11123 Chalmers Avenue, Warren, Michigan 48089.

20.   Warren Pharmacy Rx LLC ("Warren Rx") was a pharmacy located at 15210 W. Warren Avenue, Dearborn, Michigan 48126.

## The Defendant and Other Individuals

21.   In  or  around  2019  through  in  or  around  2022,  Defendant  ALI NASERDEAN, a resident of Wayne County, Michigan, was the owner of Warren Rx; was employed as a pharmacy technician at Gracee, Warren Family, and Warren Rx; was the resident agent for Warren Rx; and, at various times, the resident agent for Warren Family.

22.   Isaiah Okoh, a resident of Macomb County, Michigan, was a licensed pharmacist in Michigan and the owner and resident agent of Gracee and Warren

6

Family.  Isaiah Okoh served as the pharmacist-in-charge of Gracee, Warren Family, and Warren Rx.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)
### ALI NASERDEAN

23.  Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

24.  From approximately in or around 2019, and continuing through in or around 2022, the exact dates being unknown to the Grand Jury, in Wayne and Macomb Counties, in the Eastern District of Michigan, and elsewhere, ALI NASERDEAN did voluntarily and knowingly combine, conspire, confederate, and agree with Isaiah Okoh and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

**Purpose of the Conspiracy**

25.   It was the purpose of the conspiracy for ALI NASERDEAN and his co-conspirators, including Isaiah Okoh, to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others and to further the fraud.

**Manner and Means of the Conspiracy**

26.   The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

27.   ALI NASERDEAN, Isaiah Okoh, and others agreed to maintain national provider identifiers for Gracee, Warren Family, and Warren Rx, to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

28.   ALI NASERDEAN, Isaiah Okoh, and others, on behalf of Gracee, Warren Family, and Warren Rx, agreed to enter into pharmacy provider agreements

with CVS Caremark, OptumRX, and Express Scripts, among other PBMs. As part of these agreements, ALI NASERDEAN, Isaiah Okoh, and others, on behalf of Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent documents in which they agreed to operate in compliance with applicable laws and agreed that the submission of incomplete, false, or fraudulent claims was prohibited.

29. ALI NASERDEAN, Isaiah Okoh, and others, on behalf of Gracee, Warren Family, and Warren Rx, concealed their scheme by falsely certifying that they would abide by Medicare, Medicaid, and PBM rules and regulations.

30. ALI NASERDEAN, Isaiah Okoh, and others, through Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, for prescription drugs that were medically unnecessary and/or not actually dispensed. In many instances, Gracee, Warren Family, and Warren Rx lacked the inventory to dispense these drugs.

31. ALI NASERDEAN, Isaiah Okoh, and others, through Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS for prescription drugs that were not ordered by a physician.

32. ALI NASERDEAN, Isaiah Okoh, and others received illicit proceeds from the fraudulent scheme through entities owned or controlled by ALI NASERDEAN or Isaiah Okoh in order to conceal and disguise the nature and source of those proceeds.

33. Between 2019 and 2022, ALI NASERDEAN, Isaiah Okoh, and others, through Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors totaling at least $2,450,000 when such drugs were medically unnecessary, not actually dispensed, not ordered by a physician, and/or ineligible for reimbursement.

34. Between 2019 and 2022, ALI NASERDEAN, Isaiah Okoh, and others, through Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent claims to Medicaid and Medicaid health plans totaling at least $3,550,000 when such drugs were medically unnecessary, not actually dispensed, not ordered by a physician, and/or ineligible for reimbursement.

35. Between 2019 and 2022, ALI NASERDEAN, Isaiah Okoh, and others, through Gracee and Warren Family, submitted and caused the submission of false and fraudulent claims to BCBS totaling at least $21,000 when such drugs were medically unnecessary, not actually dispensed, not ordered by a physician, and/or ineligible for reimbursement.

36.   ALI NASERDEAN personally profited from his participation in the scheme, directly or indirectly, by receiving fraud proceeds for the personal use and benefit of himself and others.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-4
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)
### ALI NASERDEAN

37.   Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

38.   From approximately in or around 2019, and continuing through in or around 2022, in Wayne and Macomb Counties, in the Eastern District of Michigan, and elsewhere, ALI NASERDEAN, together with others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

39.   Paragraph 25 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

## The Scheme and Artifice

40.   Paragraphs 26 through 36 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of the Scheme and Artifice

41.   On or about the dates set forth below, in Wayne and Macomb Counties, in the Eastern District of Michigan, ALI NASERDEAN, in connection with the delivery of and payment for health care benefits, items, and services, and aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs:

12

| Count | Pharmacy | Beneficiary | Program | Approx Date Claim Submitted | Prescription Drug Description | Approx. Paid Amount |
|-------|----------|-------------|---------|------------|------------|------------|
| 2 | Gracee | T.W. | Medicaid | 2/4/2021 | Descovy | $1,895.98 |
| 3 | Warren Family | D.P. | Medicaid | 11/23/2021 | Rexulti | $1,205.91 |
| 4 | Warren Rx | S.T. | Medicaid | 9/7/2022 | Rexulti | $1,290.01 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982(a)(7))

41. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which ALI NASERDEAN has an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C), and 982(a)(7), and 28 U.S.C. § 2461.

42. Upon being convicted of the crimes charged in Count 1 through 4 of this Indictment, ALI NASERDEAN shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461; and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of

13

the offense, pursuant to 18 U.S.C. § 982(a)(7), including by not limited to the following "Subject Assets":

(a) $29,589.00 U.S. Currency from a 2020 Land Rover Range Rover, VIN: SALGS5SE6LA406550, registered to Isaiah Okoh (23-FBI-002390);

(b) $315,138.00 U.S. Currency from the residence at 174 Legacy Park Circle, Dearborn Heights, Michigan (23-FBI-002391);

(c) $20,000.00 U.S. Currency from the residence at 5481 Maple Street, Dearborn, Michigan (23-FBI-002392);

(d) Lending Club cashier's check number XX0166 in the amount of $427,136.19 made payable to the City of Dearborn and wired to the United States Marshals Service (23-FBI-002693);

(e) Huntington Bank cashier's check number XXXXXX8541 in the amount of $355,170.53 made payable to the City of Dearborn and wired to the United States Marshals Service (23-FBI-002694);

(f) 2020 Land Rover Range Rover, Style: Station Wagon, Color: Black VIN: SALGS5SE6LA406550 (23-FBI-002328) or proceeds from the interlocutory sale thereof;

(g) Rolex Yacht-Master II Watch, serial number 370JR482 (23-FBI-003232);

(h)   Breitling Crosswind Watch, serial number 267964 (23-FBI-003892);

(i)   One (1) Louis Vuitton Monogram Macassar Josh backpack brown monogram canvas with black accent top panel; one (1) counterfeit Louis Vuitton Damier Graphite duffle bag (23-FBI-010079); and

(j)   $50,400.36 in funds from bank account Number #XXXXXX4458 held in the name of Gracee Pharmacy, LLC at Grasshopper Bank, New York, NY (25-FBI-000261).

43.   *Money Judgment*:  The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the value of the property subject to forfeiture.

44.   *Substitute Assets*:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.)   cannot be located upon the exercise of due diligence;

b.)   has been transferred or sold to, or deposited with, a third party;

c.)   has been placed beyond the jurisdiction of the Court;

d.)   has been substantially diminished in value; or

e.)   has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant, up to the value of the forfeitable property described above.

Dated: June 17, 2025

THIS IS A TRUE BILL.


*s/Grand Jury Foreperson*
Grand Jury Foreperson



JEROME F. GORGON JR
UNITED STATES ATTORNEY

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

RYAN A. PARTICKA
Chief, White Collar Crime Unit
United States Attorney's Office
Eastern District of Michigan

*s/Jeffrey A. Crapko*
*s/Syed Ahmadul Huda*
JEFFREY A. CRAPKO
SYED AHMADUL HUDA
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 445-9832
Email: Jeffrey.Crapko@usdoj.gov
           Syed.Ahmadul.Huda@usdoj.gov

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cove** | Case: 2:25–cr–20454<br>Assigned To : Hood, Denise Page<br>Referral Judge: Patti, Anthony P.<br>Assign. Date : 6/17/2025<br>Description: INDI USA V. NASERDEAN (NA) |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete ~~it accurately in all respects.~~**

| **Companion Case Information** | **Companion Case Number:** 24-cr-20141 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Judith E. Levy |
| ☒ Yes        ☐ No | **AUSA's Initials:** _/C_ |

**Case Title:** USA v.  Ali Naserdean

**County where offense occurred :**  Wayne County

**Check One:**        ☒ Felony               ☐ Misdemeanor               ☐ Petty

_✓_ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:**                    ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

# Superseding Case Information

**Superseding to Case No:** _____        **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Ali Naserdean | 18 U.S.C. § 1349<br>18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 981 and 982 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 17, 2025
Date

Jeffrey A. Crapko, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 445-9832
Fax:
E-Mail address: Jeffrey.Crapko@usdoj.gov
Attorney Bar #: P78487

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.